IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHRISTINA M. FANASE, individually and
as beneficiary of a certain life
insurance policy of DEBBILOU SWABADO,
deceased,

    Plaintiff,

v.                                      Civil Action No. 5:10CV92
                                                        (STAMP)

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO STRIKE AND
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

I.  Procedural History

Christina M. Fanase, the plaintiff in this civil action, individually and as the beneficiary of the life insurance policy of Debbilou Swabado ("Swabado"), filed a complaint in the Circuit Court of Brooke County, West Virginia alleging that the defendant, Liberty Life Assurance Company of Boston ("Liberty Life"), had wrongfully denied the accidental death claim brought by the plaintiff after the death of Swabado.[1] Liberty Life timely removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331, arguing that this action

---

[1] The plaintiff is the designated beneficiary of a life insurance policy, policy number SA3-880-025266-01, issued by the defendant on the life of Debbilou Swabado. (Compl. ¶ 1.)

involves claims that relate to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

Following removal, Liberty Life filed two motions: (1) a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) a motion to strike pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. The plaintiff filed a response to the defendant's motion to dismiss, to which the defendant replied.[2] Both motions are currently pending before this Court.

## II. Facts[3]

Liberty Life issued Group Life Insurance Policy No. SA3-880-025266-01 ("Policy") pursuant to the Severstal Wheeling, Inc. ("Severstal") group life insurance plan ("Severstal Plan"). Before her death, Swabado was employed by Severstal and participated in the Severstal Plan, which provides certain group life benefits to eligible active and retired employees of Severstal and associated companies. The benefits under the Severstal Plan are funded by Liberty Life.

On December 9, 2007, law enforcement officials found Swabado dead on a hillside near her home. Swabado had been under the care of various physicians for some time and had received prescriptions

---

[2]The plaintiff did not, however, respond to the defendant's motion to strike.

[3]For purposes of deciding these motions, the facts are based upon the allegations contained in the complaint.

for both zolpidem and oxycodone as a part of her treatment.  Dr. Matrina Schmidt of the West Virginia Medical Examiners Officer performed an autopsy on December 10, 2007 and issued a certificate of death which stated that the immediate cause of death was "environmental hypothermia complicating zolpidem intoxication." (Compl. ¶ 5.)  Swabado's oxycodone use was deemed to have contributed to her death, but the manner of death was determined to be accidental.

On August 18, 2008, Liberty Life denied the plaintiff's claim for accidental death benefits on the basis that Swabado's death was "contributed to or caused by (a) intentionally self-inflicted injuries, while sane or insane; (b) controlled substances (as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and all amendments) that were taken voluntarily, ingested or injected, unless prescribed or administered by a physician."  (Compl. ¶ 6.)  The plaintiff requested further review of the claim under the appeal procedures of the policy, but the claim was once again rejected by Liberty Life on February 13, 2009.  The plaintiff's complaint, filed on August 12, 2010, states two causes of action: Count I alleges a claim of bad faith and Count II alleges a breach of contract.

III. Applicable Law

A. ERISA Preemption

ERISA expressly preempts all state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Two criteria must be met for a plaintiff's state law claims to be preempted by ERISA: (1) an "employee benefit plan" must exist; and (2) the plaintiff must have standing to sue as a "participant" or "beneficiary" of the employee benefit plan. Madonia v. Blue Cross & Blue Shield of Va., 11 F.3d 444, 446 (4th Cir. 1993). The Department of Labor issued a regulation exempting certain benefit plans from ERISA. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 417 (4th Cir. 1993). This "safe harbor" exception exempts from ERISA "those arrangements in which employer involvement is completely absent." Vazquez v. The Paul Revere Life Ins. Co., 289 F. Supp. 2d 727, 731 (E.D. Va. 2001); 29 C.F.R. § 2510.3-1(j).

B. Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). A court

4

will decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet,

591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

C. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). The standard upon which a motion to strike is measured places a substantial burden on the moving party. "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993). Generally, such motions are denied "unless the allegations attacked have no possible relation to the controversy and may prejudice the other party." Steuart Inv. Co. v. Bauer Dredging Constr. Co., 323 F. Supp. 907, 909 (D. Md. 1971).

IV. Discussion

A. Motion to Dismiss

In support of its motion to dismiss, the defendant first asserts that the plaintiff's state law claims are preempted by ERISA and are therefore subject to dismissal. The defendant

6

further argues that the state law claims should not be re-characterized as an ERISA claim for benefits because any such claim would be time-barred by the contractual limitation of actions provision in the Policy.[4]  Second, the defendant contends that even if the state law claims are not preempted, the plaintiff's common law bad faith claim and her claims arising under the West Virginia Unfair Trade Practices Act ("WVUTPA"), W. Va. Code §§ 33-11-1 through 33-11-10, are time-barred under the applicable statute of limitations.

In response, the plaintiff argues that ERISA contains no statute of limitations for actions to recover benefits under a regulated plan.  Because her claim is closely analogous to a claim arising out of a breach of contract, the plaintiff contends that she has a ten-year period within which to bring her claim.  Since she filed her complaint eighteen months after the denial of her benefits, the plaintiff asserts that she is well within the statute of limitations.

This Court first addresses the defendant's contention that the plaintiff's complaint is based upon state law claims that are

---

[4]However, in its reply to the plaintiff's memorandum in response to the defendant's motion to dismiss, the defendant requests that this Court deny, without prejudice, that portion of the defendant's motion to dismiss that asserts that the plaintiff's claim would be barred if re-characterized as a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, subject to the defendant's continued right to assert this defense in answer to the complaint.

preempted by ERISA.  As described above, two criteria must be met in order for a plaintiff's state law claims to be preempted by ERISA.  This Court begins its analysis of whether an employee benefit plan exits by looking to the language of the statute.  Liberty Life, as a party seeking to use ERISA preemption as an affirmative defense to the plaintiff's state law claims, has the burden of proving the facts necessary to establish ERISA preemption.  Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp., 523 F.3d 266, 270 (4th Cir. 2008).  The statute defines "employee benefit plan" as an "employee pension benefit plan," an "employee welfare benefit plan," or a plan which is "both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).  The statutory definition of "employee welfare benefit plan" includes five elements: "(1) a plan, fund, or program (2) established or maintained (3) by an employer, employee organization, or both (4) for the purpose of providing a benefit (5) to employees or their beneficiaries."  Custer, 12 F.3d at 417 (citing Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)).

In this case, the Policy and the Certificate of Coverage ("Certificate") demonstrate each of these five elements.  As to the first two elements, the evidence in this case shows that Severstal established and maintained the Severstal Plan.  In fact, it is identified as the sponsor in the Policy itself.  The

Severstal Plan provides group life benefits to eligible active and retired employees of Severstal and its associated companies. In analyzing the last three elements, this Court finds that the defendant has proven: (1) Severstal is an employer; (2) the group life benefits offered to the Severstal employees are the type of benefits described in ERISA; and (3) the decedent was a participant because she was an employee of Severstal who was eligible to receive the benefits provided by the Policy. 29 U.S.C. § 1002(7) (defining "participant"). Moreover, Severstal is responsible for certain administrative functions relating to the Severstal Plan, including informing Liberty Life of employee eligibility and issuing Employee Certificates. Severstal also has the authority to unilaterally terminate the Policy upon thirty-one (31) days notice to Liberty Life. Thus, the plan at issue in this civil action meets all five prongs of the Donovan test and constitutes an ERISA welfare benefit plan.

An ERISA plan exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Madonia, 11 F.3d at 446 (quoting Donovan, 688 F.2d at 1373). In this case, the intended benefit is the group life insurance coverage. The beneficiaries are the eligible Severstal employees. Severstal pays the premiums for the benefits provided by the Policy, and the benefits are funded by Liberty

Life.  Finally, the Certificate provides the procedures for submitting notice and proof of claim to Liberty Life and instructions for appealing denied claims.  Therefore, all the elements are met to establish the existence of an ERISA plan.

The defendant further argues that the Severstal Plan is not excluded from ERISA by the safe harbor regulation.  The plaintiff does not refute this position.  The Department of Labor issued the "safe harbor" provision to help clarify the meaning of the phrase "established or maintained by the employer."  Moore v. Life Ins. Co. of North Am., 708 F. Supp. 2d 597, 606 (N.D. W. Va. 2010) (citing Hall v. Standard Ins. Co., 381 F. Supp. 2d 526, 529 (W.D. Va. 2005)).  This regulation provides:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization under which (1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  All four of these conditions must be present for a plan to qualify for the safe harbor regulation. Vazquez, 289 F. Supp. 2d at 731.

In this case, the Policy demonstrates that Severstal pays all the premiums for active employees in classes 2-6 of the Policy and for retried employees in classes 7-10. Accordingly, the Several Plan fails the first element of the safe harbor regulation. 29 C.F.R. § 2510.3-1(j)(1). This Court finds that Liberty Life has met its burden of establishing that the safe harbor exception does not apply. Because the Severstal Plan meets all the statutory elements of an ERISA plan and the safe harbor regulatory exception does not apply, the plaintiff's state law claims are preempted by ERISA and must be dismissed. However, this Court recognizes that the plaintiff's claims can be re-characterized as a claim under § 1132(a)(1)(B) of the ERISA statute.

This Court notes that the plaintiff's state law claims must be dismissed because they are preempted by ERISA, not because they are time-barred under the terms of the Policy. ERISA does not provide an explicit limitation period for bringing a private cause of action to recover benefits under a regulated plan. Dameron v. Sinai Hosp. of Baltimore, Inc., 815 F.2d 975, 981 (4th Cir. 1987). Thus, this Court must "look to state law for an analogous limitation provision to apply." Id. (citing Wilson v. Garcia, 471 U.S. 261 (1985)). This Court agrees with the plaintiff's contention that her claim is closely analogous to a claim arising out of a breach of contract. Accordingly, the ten-year West

11

Virginia statute of limitations for a breach of contract action applies to this case.  See W. Va. Code § 55-2-6.

In addition to creating a specific statute of limitations for breach of contract actions, the West Virginia legislature has also specifically prohibited insurance companies from including provisions in their policies that reduce the statute of limitations to a period of less than two years.  See W. Va. Code § 33-6-14 (stating that no policy shall contain any condition limiting the time within which an action may be brought to a period of less than two years from the time the cause of action accrues).  In this case, the plaintiff's claim for benefits under ERISA accrued on the date Liberty Life denied her administrative appeal -- February 13, 2009.  The plaintiff filed her complaint on August 12, 2010, easily within the ten-year statute of limitations.  This Court finds that because the Policy provides a one-year limitations period in violation of the two-year minimum described in W. Va. Code § 33-6-14, the limitations period contained in the Policy is expressly voided.  See Beasley v. Allstate Ins. Co., 184 F. Supp. 2d 523, 527 (S.D. W. Va. 2002) ("[T]he voiding of offending provisions [results] in the general contract limitations period coming into play to fill the void.").  Thus, the plaintiff's claims cannot be dismissed because of the Policy's contractual limitation

of actions provision and the defendant's motion to dismiss must be denied on the ground that the claims are time-barred.[5]

B.  Motion to Strike

The defendant has moved to strike the plaintiff's demands for a trial by jury and for extra-contractual damages, arguing that they are unavailable as a matter of law for claims subject to ERISA.  According to the defendant, the plaintiff's sole remedies, if any, must arise under the civil enforcement provisions of ERISA and are triable only to the Court.  In her response, the plaintiff acknowledges that she cannot seek extra-contractual damages beyond what the ERISA statute provides.

It is well-settled that Congress did not provide for extra-contractual damages under ERISA.  See Mertens v. Hewitt Assoc., 508 U.S. 248, 256 (1993); U.S. Steel Min. Co., Inc. v. District 17, United Mine Workers of Am., 897 F.2d 149, 153 (4th Cir. 1990).  As these cases establish, the plaintiff is not entitled to any form of extra-contractual relief -- only benefits that may be due under her ERISA-controlled plan.  Accordingly, this Court must grant the defendant's motion to strike the plaintiff's claims for extra-contractual damages.

---

[5]This Court sees no reason to adopt the recommendation presented by the defendant in its reply brief, specifically, that the Court deny, without prejudice, that portion of the motion to dismiss that asserts that the plaintiff's claim would be barred because of the Policy's contractual limitations of actions provision.  That defense, in the opinion of this Court, lacks merit.

13

The United States Court of Appeals for the Fourth Circuit has also held that actions under ERISA are for the court, not a jury. See Varghese v. Honeywell Intern., Inc., 424 F.3d 411, 415 n.5 (4th Cir. 2005) (citing Phelps v. C.T. Enter., Inc., 394 F.3d 213, 222 (4th Cir. 2005)) (stating that under ERISA, a claimant may not insist upon a jury trial). Thus, the plaintiff's demand for a jury trial must also be stricken by this Court.

## V. Conclusion

For the reasons stated above, the defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, the defendant's motion to dismiss the plaintiff's state law claims is GRANTED on the ground that the state law claims are preempted by ERISA. The defendant's motion to dismiss is DENIED insofar as it seeks dismissal on the ground that the claims are time-barred under the express terms of the Policy. The defendant's motion to strike the plaintiff's demands for extra-contractual damages and for trial by jury is GRANTED. This Court construes the plaintiff's claims as an ERISA claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). If she so chooses, the plaintiff may file an amended complaint within twenty-one (21) days of this memorandum opinion and order to state causes of action under 29 U.S.C. § 1132(a)(1)(B).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     May 5, 2011

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE